COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Huff,[*] Judges Chafin and Decker
Argued at Richmond, Virginia

UNPUBLISHED

DOMINIQUE TAJUAN WALLER

v.      Record No. 0070-14-2

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[**] BY
JUDGE MARLA GRAFF DECKER
MARCH 10, 2015

FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
Bradley B. Cavedo, Judge

Dorian Dalton, Supervising Assistant Public Defender (Office of the
Public Defender, on brief), for appellant.

Kathleen B. Martin, Senior Assistant Attorney General (Mark R.
Herring, Attorney General, on brief), for appellee.


Dominique Tajuan Waller appeals his conviction for possession of a controlled

substance, in violation of Code § 18.2-250. He contends that: (A) he was deprived of his right

to an impartial jury, (B) the trial court erred by admitting the certificate of analysis and the

accompanying testimony into evidence, (C) the court erred by rejecting his proposed jury

instruction on the knowledge element of the offense, and (D) the evidence was insufficient to

support his conviction. We hold that the trial court did not abuse its discretion during *voir dire*,

the challenged evidence was admissible, the rejection of the proposed jury instruction was not an

abuse of discretion, and the evidence was sufficient to prove the offense. For these reasons, we

affirm the conviction.

---

[*] On January 1, 2015, Judge Huff succeeded Judge Felton as chief judge.

[**] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

# I. BACKGROUND

During a lawful search of the appellant, Officer Willie O'Neil, of the City of Richmond Police Department, found a cigarette pack in the appellant's pocket. A "blunt" and a cigarette were inside the cigarette pack. O'Neil described the blunt as a "rolled-up" cigar with marijuana instead of tobacco inside it. When Officer O'Neil started to put the cigarette box in an evidence bag, the appellant asked if he could have his "cigarettes." O'Neil removed the single cigarette from the pack and returned it to the appellant.

The officer put the cigarette pack, with the blunt, inside an evidence bag and sealed the bag. Once at the police station, Officer O'Neil discovered eight "baggies" containing white powder also inside the cigarette pack. The officer "sen[t] [the baggies] to property" in a sealed evidence bag for delivery to the state forensics laboratory for analysis.

Officer Mark Reres, of the Richmond Police Department's Property and Evidence Section, testified that he delivered the evidence bag to the Department of Forensic Science (DFS). Robert Steiner, a principal forensic scientist at DFS, testified that he analyzed the substance that was inside the baggies and determined that it was cocaine. The appellant objected to Steiner's testimony about the test results, arguing that the Commonwealth had not established the chain of custody. The trial court overruled the objection and admitted Steiner's testimony and the certificate of analysis.

After the conclusion of the evidence, the appellant requested that the trial court provide the jury with a separate jury instruction specifically addressing the element of knowledge. The trial court refused the proposed instruction as duplicative of a granted instruction.

The jury convicted the appellant of possession of cocaine. He was sentenced to six months in jail.

## II. ANALYSIS

The appellant raises four assignments of error. He contends that the trial court's disclosure of a personal relationship with a potential juror on the venire was untimely and violated his constitutional rights. Second, the appellant suggests that the Commonwealth failed to establish the chain of custody for the cocaine found on his person, and consequently the certificate of analysis and accompanying testimony should not have been admitted into evidence. Third, he claims that the trial court abused its discretion in denying his proposed model jury instruction on knowledge of the character of the controlled substance. Last, the appellant argues that the evidence was insufficient to prove that he knew of the presence or character of the cocaine.

### A. Venire

The appellant suggests that the jury panel was not impartial because the presiding judge knew a potential juror and did not timely disclose this to counsel. He reasons that he was entitled to a full panel of twenty impartial jurors. The Commonwealth argues that the appellant received a fair and impartial jury.

During *voir dire*, the judge asked the members of the venire if they knew the Commonwealth's attorney handling the case, any other assistant Commonwealth's attorneys for the City of Richmond, or the defense attorneys. The judge also asked them if they knew the Commonwealth's Attorney for the City of Richmond. One panel member answered that he knew the Commonwealth's Attorney, but that relationship would not affect his ability to be fair. The judge further inquired if anyone had "any interest, personal or otherwise, in this trial or in the outcome of the case," and no one responded. The defense attorney queried if anyone was an attorney, good friends with an attorney, or related to an attorney. One venire member responded that he had friends who were civil and criminal attorneys. Upon further questioning, he stated

that those relationships would not affect his evaluation of the case. A second venire member indicated that her stepfather was an attorney, but that any conversations with him about the law would not affect her ability to serve as a juror. A third member, Adriene Hungerford, stated that she knew a civil attorney, but that her relationship with that person would not affect her ability to serve as a juror.

Hungerford was among the prospective jurors who were struck through preemptory challenges.[1] After the jury was selected and sworn in, the judge commented, "Who struck Ms. Hungerford? She is a friend of mine. I'm surprised she didn't say I knew lawyers and I know a judge too. Her husband is a childhood friend of mine."[2]

The right to a jury trial is provided under both the United States and Virginia Constitutions. E.g., Brooks v. Commownealth, 24 Va. App. 523, 527, 484 S.E.2d 127, 129 (1997). "'It is the duty of the trial court, through the legal machinery provided for that purpose, to procure an impartial jury to try every case.'" Lovos-Rivas v. Commonwealth, 58 Va. App. 55, 60, 707 S.E.2d 27, 30 (2011) (quoting Salina v. Commonwealth, 217 Va. 92, 93, 225 S.E.2d 199,

---

[1] The fact that the appellant used a preemptory challenge to strike Hungerford does not abrogate this Court's responsibility to review this assignment of error. Following the statutory process for jury selection is mandatory. Winston v. Commonwealth, 32 Va. App. 864, 870-71, 531 S.E.2d 59, 62 (2000). "[A]ny 'departure from a strict observance of the statutory provisions,' when done 'over the protest of the accused . . . constitutes reversible error.'" Id. at 869, 531 S.E.2d at 61 (quoting Elkins v. Commonwealth, 161 Va. 1043, 1047, 171 S.E. 602, 603 (1933)) (holding that the error of improperly seating a venireman was not harmless to the defendant even though the Commonwealth used a preemptory strike against him); see also David v. Commonwealth, 26 Va. App. 77, 80, 493 S.E.2d 379, 381 (1997) ("[A] trial court's refusal to remove a juror who is not impartial does not constitute harmless error even if counsel uses a peremptory strike to exclude the juror.").

[2] The Commonwealth contends that the appellant did not preserve this issue under Rule 5A:18 because he failed to object when the judge first indicated that he knew one of the members of the venire, or at any other time during the trial. Regardless of whether these circumstances triggered the statutory exception to the contemporaneous objection requirement, we hold that the trial court did not err. See Code § 8.01-384(A) ("[I]f a party has no opportunity to object to a ruling or order at the time it is made, the absence of an objection shall not thereafter prejudice him on motion for a new trial or on appeal.").

200 (1976)).  The purpose of *voir dire* is to "select a fair and impartial jury," as required by the United States and Virginia Constitutions.  Beavers v. Commonwealth, 245 Va. 268, 276, 427 S.E.2d 411, 417 (1993).

In a felony case, such as this one, "[t]welve persons from a panel of not less than 20 shall constitute a jury."  Code § 19.2-262(B).  "A trial judge has broad discretion and control over how *voir dire* is conducted and the procedure for seating a jury."  Brooks, 24 Va. App. at 529, 484 S.E.2d at 129.  During *voir dire*,

> [t]he court and counsel for either party shall have the right to examine under oath any person who is called as a juror therein and . . . to ask such person or juror directly any relevant question to ascertain whether he is related to either party, or has any interest in the cause, or has expressed or formed any opinion, or is sensible of any bias or prejudice therein; and the party objecting to any juror may introduce any competent evidence in support of the objection; and if it shall appear to the court that the juror does not stand indifferent in the cause, another shall be drawn or called and placed in his stead for the trial of that case.

Code § 8.01-358.  Although a trial court must remove a biased juror, "a social relationship, standing alone, is no cause for disqualification."  Wise v. Commonwealth, 230 Va. 322, 325, 337 S.E.2d 715, 717 (1985) (holding that a prospective juror was not disqualified solely on the basis of his friendship with the Commonwealth's Attorney); see also Mayfield v. Commonwealth, 59 Va. App. 839, 847-48, 722 S.E.2d 689, 693-94 (2012) (affirming the trial court's refusal to strike a juror for cause on the basis of her familial relationship to two of the prosecution witnesses).

The venire was asked if anyone knew the attorneys for either party, any other assistant Commonwealth's attorneys for the City of Richmond, or the Commonwealth's Attorney himself. The panel also was asked if anyone was an attorney, was good friends with an attorney, or had a family member who was an attorney.  In addition, the judge asked if anyone had "any interest, personal or otherwise, in this trial or in the outcome of the case."

The trial court followed the statutory mandates governing the *voir dire* process. Both parties had the opportunity to examine the venire, and the panel was specifically asked about personal relationships with attorneys and whether they had any interest in the outcome of the case. The appellant had the opportunity to inquire specifically about any acquaintance with the judge, even if he did not exercise this ability. The prospective juror in question indicated that she knew a civil attorney but that relationship would not affect her ability to serve fairly as a juror. The *voir dire* and jury selection process met the statutory requirements and constitutional mandates. Consequently, the trial judge did not abuse his discretion while overseeing *voir dire* by failing to disclose his personal acquaintance with the prospective juror prior to the selection of the jury.

### B. Admissibility of Challenged Evidence

The appellant argues that the Commonwealth failed to prove the chain of custody of the cocaine because the witnesses did not testify as to the identifying numbers on the evidence bag. He also contends that the chain of custody was not established because of a discrepancy between the descriptions of the powder provided by two witnesses.

This Court reviews a trial court's decision regarding the admissibility of evidence for abuse of discretion. See, e.g., Herndon v. Commonwealth, 280 Va. 138, 143, 694 S.E.2d 618, 620 (2010); Dean v. Commonwealth, 61 Va. App. 209, 213, 734 S.E.2d 673, 675 (2012). We will only hold that an abuse of discretion occurred "'when reasonable jurists could not differ'" in such a finding. Pope v. Commonwealth, 60 Va. App. 486, 517, 729 S.E.2d 751, 766 (2012) (quoting Thomas v. Commonwealth, 44 Va. App. 741, 753, 607 S.E.2d 738, 743, adopted upon reh'g en banc, 45 Va. App. 811, 613 S.E.2d 870 (2005)). Further, it is the appellant's burden to prove that "the trial court's admission of the evidence constitutes reversible error." Alvarez v. Commonwealth, 24 Va. App. 768, 776, 485 S.E.2d 646, 650 (1997).

Officer O'Neil testified that he put the cigarette pack, with the blunt, inside an evidence bag and sealed the bag. The officer brought the evidence bag to the police station to log the marijuana into evidence. While engaging in the process, he unsealed the bag, removed the cigarette pack, and removed the blunt from the pack. Inside the bottom corner of the pack, he found eight "baggies" of "white flakey powdery substance." Officer O'Neil sealed the baggies containing the substance in an evidence bag and "sen[t] it to property" for delivery to the state forensics lab for analysis.

Officer Mark Reres testified that evidence seized at night is put in the "overnight room" by the officers who obtain it. The process involves packaging the evidence, putting it in a locked locker in the overnight room, and placing the locker key in a locked drop box. Only property and evidence personnel have access to the drop box. Upon removal of the evidence from the locker, protocol requires that the officer from the Property and Evidence Section verify the evidence and the suspect's name, as well as confirm that the written paperwork is correct. Next, that officer puts a bar code on the bag, logs the information into the system, and takes the evidence to the forensic laboratory. Once at the lab, the officer again verifies the information on the paperwork with the information on the bag and compares the physical evidence against the written description on the request-for-lab-analysis form.

Officer Reres testified that the day after the evidence was seized from the appellant, he removed it from the locker. Reres explained that he followed the standard procedure with the evidence and then took the bag to the DFS lab. He stated that the evidence bag related to the appellant's case remained in his exclusive control from the time that he took it from the locker until he left it at DFS.

Robert Steiner, the DFS drug chemist, testified that he analyzed the substance that was in the evidence bag. He explained that each evidence bag has a number that must match the

number on the request-for-analysis form. Steiner confirmed that Reres delivered the evidence to the lab on June 22, 2012. Until he tested the evidence, Steiner stored it in his personal evidence locker. When the time came to analyze the material, he unsealed the evidence bag, removed the substance, weighed it, and tested it. Steiner described the evidence as eight "small bag corners, which are little corners of plastic bags." The eight individual bag corners were within another plastic bag corner and each held a "caked tan powder."

The appellant objected to Steiner's testimony about the test results, alleging that the Commonwealth had not established the chain of custody because no evidence proved that the numbers on the bag processed at the police station matched the numbers on the bag taken to DFS. The appellant also objected to the testimony because the Commonwealth had not introduced the actual drugs into evidence for Steiner to verify "that the drugs that he tested [were] in fact the same drugs or alleged drugs that were recovered by O'Neil." The appellant objected to the admission of the certificate of analysis into evidence for the same reasons. The trial court overruled the objections. The court stated that Officer O'Neil's "white" powder description and the "tan" powder description by Steiner were not contradictory because the difference could be explained by dissimilar lighting conditions.

As the proponent of the evidence regarding the chemical properties of the substance, the Commonwealth bore "the burden . . . to show with reasonable certainty that there [was] no alteration or substitution of the item." Herndon, 280 Va. at 143, 694 S.E.2d at 620; accord Jeter v. Commonwealth, 44 Va. App. 733, 737, 607 S.E.2d 734, 736-37 (2005). With regard to admission of chemical analysis evidence, the Commonwealth was required to show "each vital link in the chain of custody." Herndon, 280 Va. at 143, 694 S.E.2d at 620. The prosecutor was required to present evidence demonstrating "'reasonable certainty that the item [had] not been altered, substituted, or contaminated prior to analysis, in any way that would affect the results of

the analysis.'" Alvarez, 24 Va. App. at 776, 485 S.E.2d at 650 (alteration in original) (quoting Crews v. Commonwealth, 18 Va. App. 115, 119, 442 S.E.2d 407, 409 (1994)). "'[T]he purpose of the chain of custody rule is to establish that the evidence obtained by the police was the same evidence tested.'" Hargrove v. Commonwealth, 53 Va. App. 545, 553, 673 S.E.2d 896, 900 (2009) (quoting Brown v. Commonwealth, 21 Va. App. 552, 555, 466 S.E.2d 116, 117 (1996)).

Only "'[w]hen a "vital link" in the possession and treatment of the evidence is left to conjecture,'" is the chain of custody "'incomplete[] and the evidence . . . inadmissible.'" Id. at 554, 673 S.E.2d at 900 (quoting Jeter, 44 Va. App. at 737, 607 S.E.2d at 737). Although the Commonwealth must establish each vital link, "[o]ther gaps in the chain go to the weight of the evidence rather than its admissibility." Branham v. Commonwealth, 283 Va. 273, 282, 720 S.E.2d 74, 79 (2012); accord Pope, 60 Va. App. at 512, 729 S.E.2d at 763. Based upon this standard and the record in this case, it is clear that the Commonwealth established the chain of custody and any discrepancies went to the weight rather than the admissibility of the evidence.

After seizing the evidence from the appellant, Officer O'Neil put it in a sealed evidence bag and took it to the police station where he discovered the eight baggies of cocaine while processing the cigarette pack with the blunt. He field tested the substance inside the baggies, sealed the baggies in an evidence bag, and "sen[t] it to property" for delivery to DFS.

Consistent with O'Neil's testimony, Officer Reres, the next person in the chain of custody, testified in detail regarding the procedure for processing evidence at night. Reres stated that the day after the evidence was seized from the appellant, he took it from the evidence locker and processed it for delivery to the lab. He verified the evidence, the suspect's name, and the written paperwork. Consistent with department protocol, he reviewed the evidence along with the paperwork and then delivered it to DFS.

Steiner, the final person to handle the evidence, testified that he received the evidence from Reres the day after it was seized from the appellant. He stored it in his personal evidence locker. Steiner explained that each evidence bag has a number and that number must match the number on the request-for-analysis form. Steiner detailed the manner in which he prepared the substance for testing when he unsealed the evidence bag. He also described the substance that was in the eight "small bag corners[,] which are little corners of plastic bags."

Through this evidence the Commonwealth met its burden to show with "reasonable certainty" that the tested material was the same substance taken from the appellant. The testimony established each "vital link in the chain of custody." Everyone involved with processing the cocaine testified at trial and was subject to cross-examination. Their testimony outlined the procedures for processing the evidence and the manner in which this evidence was processed from the time it was seized by O'Neil to the time it was tested by Steiner. See Reedy v. Commonwealth, 9 Va. App. 386, 392, 388 S.E.2d 650, 653 (1990) (affirming the admission of the challenged evidence because there was "no gap in the evidence as to what happened to the items while they were the responsibility of the authorities"). Additionally, contrary to the appellant's suggestion, there is no requirement that the number on the sealed evidence bag be verified by each agent, particularly in light of the detailed description provided regarding the manner in which the evidence was handled, stored, processed, and then tested. Further, to the extent that two of the witnesses differed in describing the exact color of the powder material tested, white versus tan, the judge provided an entirely reasonable explanation for the deviation and each witness testified to eight baggies, or bag corners, containing powder. In any event, any inconsistency went to the weight of the evidence rather than its admissibility. Finally, the appellant suggests that the chemist's testimony and certificate of analysis should not have been admitted because the actual cocaine was not provided to the chemist for verification. He cites no

authority for this principle, and the record supports the finding that the chain of custody was established. Consequently, the trial court did not abuse its discretion by permitting Steiner to testify and admitting the certificate of analysis into evidence.

*C. Proposed Jury Instruction*

"As a general rule, the decision to grant or deny proffered instructions rests within the sound discretion of the trial court." Sarafin v. Commonwealth, __ Va. __, __, 764 S.E.2d 71, 74 (2014). This Court's "responsibility in reviewing jury instructions is 'to see that the law has been clearly stated and that the instructions cover all issues which the evidence fairly raises.'" Darnell v. Commonwealth, 6 Va. App. 485, 488, 370 S.E.2d 717, 719 (1988) (quoting Swisher v. Swisher, 223 Va. 499, 503, 290 S.E.2d 856, 858 (1982)). A trial court may reject a proposed instruction that correctly states the law if its contents are adequately addressed by another instruction. See, e.g., Eaton v. Commonwealth, 240 Va. 236, 257, 397 S.E.2d 385, 398 (1990); League v. Commonwealth, 9 Va. App. 199, 210, 385 S.E.2d 232, 239 (1989).

The appellant's proposed jury instruction states: "Knowledge that the substance possessed is cocaine is an element of the crime of possessing. Thus, you may not find the defendant guilty of such crime unless you believe beyond a reasonable doubt that he was aware that the substance he possessed was cocaine." That specific instruction was rejected by the trial court. The court, however, instructed the jury on the same principles through another instruction which reads:

> To knowingly and intentionally possess a controlled substance means that a person *is aware of the presence and character of the substance* and has actual physical possession or constructive possession. Actual physical possession means that the substance is found on the person. Constructive possession means that the person has dominion and control over the substance. Mere proximity is not enough.
>
> Possession need not be exclusive; it may be shared with another. The length of time of the possession is not material.

- 11 -

> Possession may be proved by acts, declarations or conduct of the defendant from which it may be fairly inferred that he was aware of the presence and character of the substance at the place found.

(Emphasis added).[3] The jury was fully instructed on the elements of the offense, which included knowledge of the character of the substance. Under these circumstances, the trial court did not err in holding that the proposed instruction was duplicative of the knowledge portion of the instruction given to the jury. Consequently, the trial court properly acted within its discretion by refusing the proffered jury instruction.

## D. Sufficiency of the Evidence

The appellant argues that the evidence was insufficient to support his conviction. Specifically, he contends that the Commonwealth failed to prove that he knew either that the baggies were in the bottom of the cigarette pack or that they contained cocaine. In the context of review of the sufficiency of the evidence, this Court upholds the conviction unless it was "'plainly wrong or lacked evidence to support it.'" Shackleford v. Commonwealth, 262 Va. 196, 209, 547 S.E.2d 899, 906 (2001); accord Sierra v. Commonwealth, 59 Va. App. 770, 775, 722 S.E.2d 656, 658 (2012) (quoting Burrell v. Commonwealth, 58 Va. App. 417, 433, 710 S.E.2d 509, 517 (2011)).

In this Court's review of the sufficiency of the evidence, we view the record in the light most favorable to the Commonwealth, the prevailing party at trial. Shackleford, 262 Va. at 209, 547 S.E.2d at 906; Sierra, 59 Va. App. at 774, 722 S.E.2d at 657. To do so, we "'discard the evidence of the accused in conflict with that of the Commonwealth.'" Dickerson v.

---

[3] The instruction that was given was the applicable portion of Virginia Model Jury Criminal Instruction 22.330. The proffered instruction also was a model jury instruction. Va. Model Jury Crim. Instruction No. 22.340. The commentary for the proffered model instruction notes, however, that "it is probably not necessary to give this instruction" if Instruction No. 22.330 is given.

Commonwealth, 58 Va. App. 351, 357, 709 S.E.2d 717, 720 (2011) (quoting Cooper v. Commonwealth, 54 Va. App. 558, 562, 680 S.E.2d 361, 363 (2009)). The Court also accepts as true all the credible evidence favorable to the prosecution as well as all fair inferences in support of the conviction that may be drawn from the record. Id. The fact finder, not this Court, is responsible for determining what inferences are to be drawn from proved facts, provided that the inferences reasonably flow from those facts. See Commonwealth v. Hudson, 265 Va. 505, 514, 578 S.E.2d 781, 786 (2003); Burton v. Commonwealth, 58 Va. App. 274, 283, 708 S.E.2d 444, 449 (2011). Finally, if the evidence is sufficient to support the conviction, the reviewing appellate court will not "substitute its own judgment for that of the trier of fact, even if its opinion might differ from the conclusions reached" by the fact finder. Jordan v. Commonwealth, 286 Va. 153, 156-57, 747 S.E.2d 799, 800 (2013); accord Kelly v. Commonwealth, 41 Va. App. 250, 257, 584 S.E.2d 444, 447 (2003) (*en banc*).

In order to establish illegal possession of a controlled substance, the Commonwealth was required to show "that the defendant's possession of the drug was knowing and intentional." Young v. Commonwealth, 275 Va. 587, 591, 659 S.E.2d 308, 310 (2008); see also Code § 18.2-250(A) (proscribing the possession of a controlled substance); Gillis v. Commonwealth, 215 Va. 298, 301, 208 S.E.2d 768, 771 (1974) (explaining that the offender must be "aware of the presence and character of the particular substance and . . . intentionally and consciously in possession of it"); Christian v. Commonwealth, 59 Va. App. 603, 608, 721 S.E.2d 809, 811-12 (2012). Physical "possession alone is not sufficient." Young, 275 Va. at 591, 659 S.E.2d at 310. Knowledge, a vital element, may be proven through the accused's "acts, statements, or conduct." Id. Further, "[o]ther circumstantial evidence may also support a finding of a defendant's knowledge of the nature and character of the substance in his possession." Id.

In this case, Officer O'Neil testified that he smelled the odor of marijuana coming from the vehicle he stopped for a traffic offense. Although the driver was calm, the appellant, a passenger in the car, appeared extremely nervous, looked from left to right. He also was sweating and breathing heavily. According to O'Neil, the appellant's heart beat so strongly and rapidly that the officer could see it beating through his shirt. O'Neil found this behavior odd in the context of a marijuana possession charge. Further, after Officer O'Neil discovered the cigarette pack in the appellant's pocket, and the blunt inside, curiously, the appellant asked if he could "at least have [his] cigarettes," with a single cigarette left in the pack. When O'Neil was processing the cigarette pack at the police station, he noticed eight "baggies" of "white flakey powdery substance" inside the bottom corner of the pack that he had taken from the appellant's pocket. O'Neil specifically testified that he did not need to peel the pack open in order to see the substance. Subsequent testing revealed that the substance was cocaine.

These facts represent far more than simply possession and support the reasonable inference that the appellant knew that the cocaine was secreted away in the bottom of the cigarette pack that was in his pocket. Although the appellant calls attention to the fact that O'Neil did not see the baggies of cocaine until he opened the box for the third time, the first two times that the officer opened the pack were outside at night. He did not conduct an inventory of the pack at the time of the seizure. When he opened the cigarette pack in the police station, the baggies were readily visible. The jury's finding that the appellant knowingly and intentionally possessed the cocaine was a reasonable one and was not plainly wrong. Ample evidence, including the appellant's odd and nervous behavior, supports the conclusion that he knew the cocaine was inside his cigarette pack along with the blunt of marijuana.

The appellant urges us to reject the jury's factual finding that he had knowledge of the presence and nature of the cocaine. His "hypothesis of innocence" at trial was that he did not

know that the cocaine was in the cigarette pack. See generally Blow v. Commonwealth, 52 Va. App. 533, 539, 665 S.E.2d 254, 257 (2008) (explaining that when a conviction is based on circumstantial evidence, that evidence must exclude every reasonable hypothesis of innocence). However, the jury rejected this hypothesis, and that conclusion cannot be disturbed on appeal unless it is plainly wrong. See generally Taylor v. Commonwealth, 61 Va. App. 13, 30, 733 S.E.2d 129, 138 (2012) (holding that the finder of fact's rejection of a hypothesis of innocence is "'binding on appeal unless plainly wrong'" (quoting Archer v. Commonwealth, 26 Va. App. 1, 12-13, 492 S.E.2d 826, 832 (1997))). In this case, as previously discussed, the evidence supports the jury's rejection of the notion that the appellant was not aware of the eight baggie corners of cocaine that were in the cigarette pack that also contained a blunt, and was in his pocket. The evidence was sufficient to support the conviction.

### III. CONCLUSION

The trial court did not abuse its discretion in the manner in which it conducted *voir dire*, in finding that the Commonwealth adequately established the chain of custody of the cocaine, or by declining to give the jury a duplicative instruction. Further, the evidence was sufficient to support the conviction. For these reasons, we affirm the conviction for possession of a controlled substance.

Affirmed.