COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Fitzpatrick, Judges Willis and Annunziata
Argued at Chesapeake, Virginia


CEASAR LAMONT CLARK

MEMORANDUM OPINION[*] BY
v.    Record No. 2312-98-1          JUDGE ROSEMARIE ANNUNZIATA
FEBRUARY 8, 2000
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF NEWPORT NEWS
Randolph T. West, Judge

    Kevin W. Grierson (Willcox & Savage, P.C., on
    brief), for appellant.

    Donald E. Jeffrey, III, Assistant Attorney
    General (Mark L. Earley, Attorney General, on
    brief), for appellee.


    In this appeal, Ceasar Lamont Clark raises the sole issue

of breach of chain of custody of illegal drug evidence allegedly

recovered from his person during a pat-down incident to his

detention on suspicion of shoplifting.  Clark contends the

evidence was inadmissible on the ground that the chain of

custody was breached.  Finding no error, we affirm the

conviction.

FACTS

    We review the facts in the light most favorable to the

Commonwealth.  See Juares v. Commonwealth, 26 Va. App. 154, 156,

493 S.E.2d 677, 678 (1997).

---

    * Pursuant to Code § 17.1-413, recodifying Code
§ 17-116.010, this opinion is not designated for publication.

On February 10, 1998, Clark was arrested on a charge of shoplifting at a department store in Newport News, Virginia. Mall security officers apprehended Clark in the store parking lot. Roughly twenty minutes elapsed from the time of Clark's initial detention by the security officers until the arrival of Officer Dwight Walston of the Newport News City Police, who arrested Clark. During this time, the mall security officers conducted a lawful pat-down of Clark, and found a cellophane bag containing two syringes and what appeared to be bags of a "solid white substance" secreted on Clark's person. One of these officers, Joseph Schmitt, placed the syringes and bags on the hood of a nearby automobile. Officer Walston noted when he arrived at the scene approximately twenty minutes later that this automobile was parked roughly one to two feet from Clark. Walston testified, however, that he retrieved one syringe from the hood of the car and a plastic bag containing a "white powdery substance."

Upon arriving at the police station with Clark in custody, Officer Walston placed the evidence in the Property and Evidence room, where the material was assigned the control number 70240. It was then locked in an empty evidence locker. Testimony indicated that this evidence was not removed from the locker until it was opened by Detective Paul Cole, who retrieved the material and placed it into the "main drug cage." On February

17, 1998, Detective Cole removed the evidence and took it to the Norfolk Forensic Lab, where he turned it over to a "duly sworn agent of the lab."  Detective Cole received the evidence back from the lab along with a copy of the certificate of analysis bearing Clark's name and the control number, 70240.  Cole placed the evidence once again in the main drug cage, where it remained until trial.

At Clark's bench trial for larceny and possession of cocaine, the Commonwealth offered into evidence the certificate of analysis of the items taken from Clark upon his arrest. Clark moved to strike this evidence on the ground that chain of custody had not been established and that the description of the items taken from him did not match the items tested.  His motion was denied.  At the close of evidence, Clark moved to strike the Commonwealth's evidence on the same grounds, and the court again denied his motion.  Clark was convicted on both charges, and now appeals his conviction for possession of cocaine.

### ANALYSIS

The party offering demonstrative evidence bears the burden of showing with reasonable certainty that there has been no alteration or substitution of that evidence.  See Robinson v. Commonwealth, 212 Va. 136, 138, 183 S.E.2d 179, 180 (1971); Dotson v. Petty, 4 Va. App. 357, 361, 358 S.E.2d 403, 405 (1987).  This rule applies particularly when a chemical analysis

of an item is sought to be introduced into evidence.  See Smith
v. Commonwealth, 219 Va. 554, 559, 248 S.E.2d 805, 808 (1978).
Evidence of the chemical or physical properties of an item
requires proof of the chain of custody to establish with
reasonable certainty that the material was not altered,
substituted, or contaminated prior to its analysis.  See Gosling
v. Commonwealth, 14 Va. App. 158, 166, 415 S.E.2d 870, 874
(1992); Reedy v. Commonwealth, 9 Va. App. 386, 387, 388 S.E.2d
650 (1990).  All that is necessary to show chain of custody is
that the evidence affords reasonable assurance that the exhibits
at the trial are the same, and in the same condition, as when
they were first obtained.  See Brown v. Commonwealth, 21
Va. App. 552, 555-56, 466 S.E.2d 116, 117 (1996) (citing
Robertson v. Commonwealth, 12 Va. App. 854, 857, 406 S.E.2d 417,
419 (1991)).  Moreover, "'[w]here there is mere speculation that
contamination or tampering could have occurred, it is not an
abuse of discretion to admit the evidence and let what doubt
there may be go to the weight to be given the evidence.'"
Brown, 21 Va. App. at 556, 466 S.E.2d at 117) (quoting Reedy, 9
Va. App. at 391, 388 S.E.2d at 652).

In the present case, Clark argues that the chain of custody
was broken because the security officers placed the syringes and
bags they found on his person on the hood of a nearby car, where
they were left for twenty minutes until Officer Walston arrived

on the scene.  He further notes that although Officer Schmitt testified that two syringes and three to five bags of a "solid white" substance were placed on the car, Officer Walston testified that he recovered one syringe and one plastic bag containing a "white powdery substance."  Based upon this discrepancy in testimony, coupled with the twenty minute interval during which the evidence remained on the hood of the car, Clark asserts that it is not reasonably certain that the evidence was in the same condition when analyzed as when it was first taken from him.  We disagree.

This Court has previously upheld a trial court's admission of forensic evidence that was left unattended for approximately one hour, finding no reason in the facts presented to surmise that the evidence may have been contaminated.  See Reedy, 9 Va. App. at 391, 388 S.E.2d at 652.  Length of time, then, is not necessarily determinative in such cases.  Here, the evidence established that the evidence lay on the hood of the car for only twenty minutes, and no evidence establishes that the evidence was left unattended during that time.  Further, the discrepancy between the testimonies of Officer Schmitt and Officer Walston does not compel the conclusion that the evidence was altered, substituted, or contaminated prior to its analysis; the points upon which the testimonies of Schmitt and Walston diverge are minor.  See United States v. Dent, 149 F.3d 180,

188-89 (3d Cir. 1998) (conviction for trafficking in cocaine upheld where one witness described evidence as "an off white chunky substance wrapped in foil," and another witness described it as a "white chunky residue," because the witnesses' accounts evinced "minor discrepancies [that] can be attributed to the inevitable differences in human perception").[1]  Officer Schmitt testified that when he apprehended Clark, he recovered "a bag, a cellophane bag with two syringes and several other small bag items which we believed to be drugs . . . ."  When defense counsel asked him to clarify what he meant by "several other small bag items," Schmitt responded "[t]wo syringes and other bags, several bags of what we believed to be drugs at that time, cellophane, plastic."  Schmitt stated that in total three to five of these "other small bags" were found.  Schmitt testified further that "[e]verything was in one bag and the small bags were inside the cellophane, wrapped bags."  Schmitt further testified that the bags contained a white substance having an appearance he described as "solid."

Walston testified that when he arrived at the scene, the mall security officers had removed from Clark's custody a

---

[1] Although <u>Dent</u> was decided under Federal Rule of Evidence 901, the federal rule comports with our rule in Virginia, which states that the Commonwealth is required simply to establish with reasonable assurance that the evidence analyzed and presented at trial was in the same condition as it was when obtained by the police.  <u>See</u> <u>Brown</u>, 21 Va. App. at 555-56, 466 S.E.2d at 117.

"syringe wrapped in newspaper" and that the newspaper also contained "a small plastic bag containing a white powdery substance." Under cross-examination, Officer Walston described the substance in the plastic bag as a "white powder substance," and repeated that he observed in the newspaper, "from what [he] recall[ed]," "just one bag."

Schmitt's testimony explains the confusion over the number of bags recovered from Clark. Schmitt stated that the "other small bags" were found inside one larger cellophane bag, a statement that is consistent with Officer Walston's observation of a single cellophane or plastic bag when he arrived on the scene. Schmitt's statement that the white substance in the bags appeared "solid" and Walston's observation that the substance was a "powder" may be attributed "to . . . inevitable differences in human perception," Dent, 149 F.3d at 188-89, as any tightly packed powder might be seen or described as a "solid." Similarly, Schmitt's statement that he recovered two syringes from Clark, while Walston testified to recovering only one syringe when he arrived at the scene, may be ascribed to the same "inevitable differences in human perception," id., and we find no support in this difference in testimony for Clark's allegation that the cocaine evidence tested by the forensic lab was not in the same condition as when it was taken from Clark.

Finally, Clark also contends that Officer Walston's inability at trial to recall the number of the evidence locker into which he placed the evidence evinces a break in the chain of custody. We find Clark's contention on this point to be without merit. Clark points to no evidence suggesting that Detective Cole recovered the evidence from a locker other than the one into which Officer Walston placed it. Indeed, both officers agree that the evidence was marked with the proper control number and that the locker in which it was placed had every indication of having remained sealed until Detective Cole opened it. Thus, the Commonwealth established with reasonable assurance that this evidence was that recovered from Clark at the time of his arrest and that it was in the same condition at trial as it was when first recovered. See Brown, 21 Va. App. at 555-56, 466 S.E.2d at 117. When there is merely speculation that tampering or contamination might have occurred, a trial court does not abuse its discretion by admitting the evidence and allowing the fact finder to consider that speculation in determining the weight to be accorded the evidence. See Reedy, 9 Va. App. at 391, 388 S.E.2d at 652. Accordingly, we find no error in the trial court's admission of the certificate of analysis and its denial of Clark's motion to strike the evidence, and we affirm his conviction.

Affirmed.