COURT OF APPEALS OF VIRGINIA


Present: Chief Judge Felton, Judges Frank and McClanahan
Argued at Richmond, Virginia


JEREMIAH S. HARGROVE

                                                    OPINION BY
v.      Record No. 2410-07-2         CHIEF JUDGE WALTER S. FELTON, JR.
                                                  MARCH 17, 2009
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
                         Beverly W. Snukals, Judge

            Catherine S. Rusz, Assistant Public Defender (Office of the Public
            Defender, on brief), for appellant.

            Leah A. Darron, Senior Assistant Attorney General (Robert F.
            McDonnell, on brief), for appellee.


        Following a bench trial, Jeremiah S. Hargrove ("appellant") was convicted of possession

of more than five pounds of marijuana with intent to distribute, in violation of Code

§ 18.2-248.1(a)(3), and possession of a firearm while in possession of more than one pound of

marijuana with intent to distribute, in violation of Code § 18.2-308.4(C). Appellant contends the

trial court erred by admitting into evidence the container of marijuana and certificate of analysis

related to that evidence, arguing that "the chain of custody for the container of suspected marijuana

was incomplete." He also contends the trial court erred in finding the evidence sufficient to

support his conviction for possession of over five pounds of marijuana with intent to distribute,

"absent sufficient evidence of [his] knowledge of the amount of marijuana contained in the

package," and in finding the evidence sufficient to support his conviction for possession of a

firearm while in possession of over one pound of marijuana with intent to distribute, "absent

evidence that [he] exercised dominion and control over the firearm." For the following reasons,

we affirm the judgment of the trial court, but remand to permit the trial court to correct an apparent clerical error in its conviction and sentencing orders pursuant to Code § 8.01-428(B).[1]

## I. BACKGROUND

On appeal, "[w]here the issue is whether the evidence is sufficient, we view the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom." Sandoval v. Commonwealth, 20 Va. App. 133, 135, 455 S.E.2d 730, 731 (1995). "The judgment of the trial court is presumed to be correct and will be reversed only upon a showing that it is 'plainly wrong or without evidence to support it.'" Viney v. Commonwealth, 269 Va. 296, 299, 609 S.E.2d 26, 28 (2005) (quoting Code § 8.01-680).

So viewed, the evidence proves that, during a routine check at a Federal Express warehouse, a drug-sniffing dog alerted state police officers to a package suspected to contain drugs. The package was to be delivered to "Michelle Guzman" at a Richmond address. After obtaining a search warrant, the officers searched the package and found "a large quantity of . . . what appeared to be marijuana." The officers turned the package over to Richmond City police detectives. Based on this information, Detective James Killingsworth obtained a search warrant for the residence to which the package was addressed. A Richmond detective, disguised as a Federal Express employee, delivered the package to the residence. Appellant came to the

---

[1] We note the trial court's sentencing order entered October 13, 2007 and its conviction order entered August 20, 2007, from which this appeal was taken, state appellant's conviction as "Distribution of Marijuana," in violation of Code § 18.2-248.1(a)(3). However, the record reflects that, at trial, the trial court stated it found appellant guilty of "possession of [more than five pounds of] marijuana with intent to distribute . . . in violation of Virginia Code Section 18.2-248.1, Subsection (a)(3)." See Davis v. Mullins, 251 Va. 141, 149, 466 S.E.2d 90, 94 (1996) (discussing court's authority under Code § 8.01-428(B) to correct the record to "speak the truth" by "'placing upon the record evidence of judicial action which has actually been taken . . . at the proper time,'" action which does not require reacquisition of jurisdiction (quoting Council v. Commonwealth, 198 Va. 288, 292, 94 S.E.2d 245, 248 (1956))); Dorn v. Dorn, 222 Va. 288, 291, 279 S.E.2d 393, 394-95 (1981) (noting that entry of a *nunc pro tunc* order to correct a true clerical error does not violate Rule 1:1).

door and stated that "Michelle Guzman" was upstairs but that he could "accept the package for her."[2]  He accepted the package, stating that he had been "waiting for this package."

Five to ten minutes later, police executed a search warrant for the residence.  They found the unopened package in the pantry and a loaded firearm in the adjoining room "on the kitchen table" "under," "on[,] . . . or next to [a] jacket."  The officers also recovered two "digital . . . scale[s]," paperwork, and mail bearing appellant's name from a bedroom in the residence.  Appellant was arrested, read his Miranda rights, and questioned by Detective Killingsworth.  He initially told Detective Killingsworth that "the package that he had received had jerseys in it," but later told the detective that "he knew the package had marijuana in it but he wasn't sure how much was in it."  He told the detective that "an individual . . . let's [sic] him know that a package is coming.  [Appellant] then takes the package later and sits it outside and somebody else will pick it up. . . . And . . . he does this in exchange for receiving just a small amount of marijuana back for just making the transaction."  Appellant also told Detective Killingsworth that the firearm found on the kitchen table "was his and he had it for his protection."[3]

Detective Killingsworth placed the contents of the seized package into an evidence container, sealed it, and placed his initials on the seal.  Thereafter, Detective Killingsworth accompanied Detective Wooten, who took the container to the police evidence storage facility where it was placed and secured.  On October 10, 2006, the evidence container was received by the Division of Forensic Science laboratory located in Richmond, and there assigned a unique case number.  On November 29, 2006, forensic lab analyst Corrie Meyer retrieved the container, sealed and initialed in a manner approved by the Division of Forensic Science, from a locked

---

[2] The officers determined that no one by the name of "Michelle Guzman" was present at the residence when appellant accepted delivery of the package.

[3] Appellant also testified at trial that the firearm found on the kitchen table was his.

storage area within the Division of Forensic Science lab. Meyer broke the seal on the container, analyzed its contents, and prepared a certificate of analysis. The certificate of analysis identified the evidence container, its assigned laboratory number, and that the substance analyzed within the evidence container was 143 ounces (8.94 pounds) of marijuana. At trial, over appellant's objection, the trial court admitted the marijuana and the certificate of analysis into evidence. Appellant testified at trial that he was unaware that there was marijuana in the package. He testified that he thought it contained sports jerseys that he was receiving for someone else. At the conclusion of the trial, the trial court stated, "I find [appellant's] testimony wholly incredible," and convicted him of possession of more than five pounds of marijuana with intent to distribute and possession of a firearm while in possession of more than one pound of marijuana with intent to distribute. This appeal followed.

## II. ANALYSIS

### A. Chain of Custody

Appellant contends the trial court erred by admitting into evidence the marijuana seized by the police from his residence and the certificate of its analysis from the Division of Forensic Science. He argues that there was a break in the chain of custody in the handling of the evidence, from the time it was placed in the police evidence room to the time it was removed from the evidence storage locker for testing at the Division of Forensic Science laboratory. Appellant argues that, because there was no "testimony of the officer who delivered the container to [the Division of Forensic Science lab]" nor was there any evidence that an "authorized agent . . . *received* the container on behalf of [the lab], . . . a vital link in the possession and treatment of the evidence [was] left to conjecture."[4]

---

[4] A request for the laboratory examination form was not offered into evidence.

He contends, therefore, that the Commonwealth's evidence failed to prove that the evidence seized from his residence by the police was the same evidence, free from tampering, tested by Meyer at the Division of Forensic Science lab. He does not contest the chain of custody from the time the package was first recovered by law enforcement officers at the Federal Express warehouse until the sealed evidence container was locked in the police evidence room, nor does he contest the chain of custody from the time Meyer removed the container from the locked storage area of the Division of Forensic Science lab, analyzed its contents, and returned it to police custody for presentation at trial. The trial court found that the chain of custody was sufficiently established. It concluded that because the evidence container was received at the lab "sealed and intact," there was no evidence that it was subject to tampering between the time it left the police evidence room and the time that it was removed from the lab storage locker. We conclude that the trial court did not err in admitting the evidence container and the certificate of its analysis.

Where evidence is seized and analyzed, "'[t]he purpose of the chain of custody rule is to establish that the evidence obtained by the police was the same evidence tested.'" Brown v. Commonwealth, 21 Va. App. 552, 555, 466 S.E.2d 116, 117 (1996) (quoting Robertson v. Commonwealth, 12 Va. App. 854, 857, 406 S.E.2d 417, 419 (1991)).

> "[A] chain of custody is properly established when the Commonwealth's evidence affords reasonable assurance that the exhibits at trial are the same and in the same condition as they were when first obtained." Whether the foundation is sufficient to properly establish the chain of custody is a question within the sound discretion of the trial court.

Anderson v. Commonwealth, 274 Va. 469, 479, 650 S.E.2d 702, 707-08 (2007) (quoting Vinson v. Commonwealth, 258 Va. 459, 469, 522 S.E.2d 170, 177 (1999)) (alteration in original), cert. denied, 128 S. Ct. 2473 (2008). In proving the chain of custody, "[t]he Commonwealth must . . . account for every 'vital link in the chain of possession.'" Alvarez v. Commonwealth, 24

- 5 -

Va. App. 768, 777, 485 S.E.2d 646, 650 (1997) (quoting Robinson v. Commonwealth, 212 Va. 136, 138, 183 S.E.2d 179, 180 (1971)) (internal quotation marks omitted). "When a 'vital link' in the possession and treatment of the evidence is left to conjecture, the chain of custody is incomplete, and the evidence is inadmissible." Jeter v. Commonwealth, 44 Va. App. 733, 737, 607 S.E.2d 734, 737 (2005) (quoting Robertson, 12 Va. App. at 857, 406 S.E.2d at 419).

"A court need not hear, however, from every witness who physically handled the samples for the certificate [of analysis] to be admissible. Nor must the Commonwealth's evidence 'exclude every conceivable possibility of substitution, alteration, or tampering.'" Anderson v. Commonwealth, 48 Va. App. 704, 717, 634 S.E.2d 372, 378 (2006) (quoting Pope v. Commonwealth, 234 Va. 114, 121, 360 S.E.2d 352, 357 (1987)), aff'd, 274 Va. 469, 650 S.E.2d 702 (2007), cert. denied, 128 S. Ct. 2473 (2008). "It need only provide '*reasonable assurance*' that the evidence obtained by the police was the same evidence tested." Id. (quoting Vinson, 258 Va. at 469, 522 S.E.2d at 177) (emphasis added).

> Code § 19.2-187.01 authorizes a trial court to receive a certificate of analysis as evidence of the chain of custody of the material tested. . . . [T]he statute provides that a "report of analysis duly attested by the person performing such analysis or examination in any laboratory operated by . . . the Division of Forensic Science or any of its regional laboratories . . . shall be prima facie evidence in a criminal . . . proceeding as to the custody of the material described therein from the time such material is received by an authorized agent of such laboratory until such material is released subsequent to such analysis or examination."

Harris v. Commonwealth, 261 Va. 185, 188, 541 S.E.2d 547, 548 (2001) (quoting Code § 19.2-187.01).

As appellant notes, "The statute further provides that the 'signature of the person who received the material . . . on the request for laboratory examination form shall be deemed prima facie evidence that the person receiving the material was an authorized agent.'" Harshaw v. Commonwealth, 16 Va. App. 69, 72, 427 S.E.2d 733, 735 (1993) (quoting Code § 19.2-187.01).

- 6 -

Appellant asserts that, because no request for laboratory examination form was admitted into evidence, there is no proof that an authorized agent of the laboratory received the evidence container. He argues that, absent that proof, there was a fatal break in the chain of custody of the evidence. However, "Code § 19.2-187.01 does not specifically require the Commonwealth to identify the recipient *only* through a request for laboratory examination form. The agency relationship prescribed by the statute may be established by other evidence." Id. at 72, 427 S.E.2d at 736 (emphasis added) (internal quotation marks omitted). The Commonwealth "establishe[s], prima facie, that the contraband was received by such an [authorized] agent" if "there is no hint that it was received, for example, by some mere non-employee bystander who happened to be loitering on the laboratory's premises." Harris, 261 Va. at 188-89, 541 S.E.2d at 549.

In Harris, the Supreme Court held that "the trial court clearly was entitled to infer," id. at 188, 541 S.E.2d at 548, that the unique identification number assigned to evidence tested by the Division of Forensic Science lab "was assigned by the person receiving the material," id. at 189, 541 S.E.2d at 549, and thus, that the evidence was received by "an 'authorized agent' of the laboratory, as required by [Code § 19.2-187.01]," id. at 188, 541 S.E.2d at 548. The Supreme Court noted in Harris that the "same [unique] forensic number appear[ed] on the certificate [of analysis] in question along with the police department case number, the defendant's name, and the date of receipt of the material." Id. at 189, 541 S.E.2d at 549.

Here, the evidence at trial proved that Detective Killingsworth placed the suspected marijuana seized from appellant into an evidence container and sealed it. He initialed the sealed container and witnessed its placement in the police evidence room. He testified that the container offered by the Commonwealth as evidence at trial was the same container he sealed and placed in the police evidence room, showing the trial court where he sealed and initialed it. On October

10, 2006, that same sealed evidence container was received by the Division of Forensic Science laboratory. The container was then assigned a unique case identification number by the lab and placed in the lab's storage locker. Meyer, the Division of Forensic Science lab analyst who retrieved that evidence container from the lab storage locker, testified that the seal on the container was intact before she broke it to perform her analysis on November 29, 2006. She showed the trial court the location of the seal on the container she broke, the "unique forensic case number" assigned to it when it had been received by the lab, and where her initials appeared on the container. Meyer also testified that the seals and initials on the container complied with the procedures followed by the Division of Forensic Science laboratory upon receipt of evidence to be analyzed.

The record shows that the trial court examined the "acceptance by the lab seal," as well as the Division of Forensic Science's "mark or label and initials," appearing on the evidence container. The trial court also examined the certificate of analysis, dated November 30, 2006, signed by Meyer, which was addressed to Mark E. Wooten of the Richmond Police Department. The certificate refers to the police case number, "Case #: 20061005-0634," and to the "Lab" number, "FS Lab # C06-18058," names appellant as the "Suspect," shows the "Date Received: 10/10/2006," states, "Evidence Submitted By: R. C. Dunn," and describes "Item 2" as "One sealed box containing a taped plastic container containing loose plant material, four heat sealed plastic bags containing plant material and a plastic wrapped bundle containing plant material." The certificate shows the results of the analysis to be "Marijuana, total weight: 4055 grams (143.03 ounces) of plant material."

We have previously noted that "[t]he credibility of the witnesses and the weight accorded the evidence are matters solely for the fact finder," Sandoval, 20 Va. App. at 138, 455 S.E.2d at 732, because, unlike "an appellate court which reviews only a cold record," Harris v. Woodrum,

3 Va. App. 428, 433, 350 S.E.2d 667, 670 (1986), the fact finder "has the opportunity to see and hear that evidence as it is presented," Sandoval, 20 Va. App. at 138, 455 S.E.2d at 732.

From the record on appeal, we find that a reasonable trier of fact could conclude that the required chain of custody of the evidence seized from appellant, analyzed by the Division of Forensic Science laboratory, and received by the trial court as evidence was satisfactorily established. Accordingly, we find that the trial court did not abuse its discretion in admitting into evidence the container of marijuana and the certificate of analysis regarding its contents.

### B. Possession of Marijuana with Intent to Distribute

Appellant contends the trial court erred in finding the evidence sufficient to convict him of possession of over five pounds of marijuana with intent to distribute, in violation of Code § 18.2-248.1(a)(3). He argues that the evidence presented at trial failed to prove that he "was aware of the *amount* of marijuana" contained in the package he possessed and that Code § 18.2-248.1(a)(3) requires proof of such knowledge. We find appellant's argument wholly without merit.

Code § 18.2-248.1 provides that "it shall be unlawful for any person to sell, give, distribute or possess with intent to sell, give or distribute marijuana." "Code § 18.2-248.1(a)(3) provides a penalty of not less than five nor more than thirty years when the controlled substance consists of more than five pounds of marijuana." Bolden v. Commonwealth, 263 Va. 465, 467 n.1, 561 S.E.2d 701, 702 n.1 (2002). "[P]roof that the accused possessed the weight of marijuana proscribed by Code § 18.2-248.1(a)[(3)] is an essential element of that offense." Hill v. Commonwealth, 17 Va. App. 480, 484-85, 438 S.E.2d 296, 299 (1993). However, an accused's "actual knowledge of the . . . quantity of contraband is not critical to the drug quantity determination." United States v. Fullilove, 388 F.3d 104, 108 (4th Cir. 2004) ("'[A] defendant who transports a suitcase knowing that it contains a controlled substance . . . is accountable for

the controlled substance in the suitcase regardless of his knowledge or lack of knowledge of the actual . . . amount of that controlled substance.'" (quoting U.S.S.G. § 1B1.3, comment. (n.2(a)(1)))). As Lord Morris so aptly noted, "Those who skate on thin ice can hardly expect to find a sign which will denote the precise spot where they may fall in." Knuller v. DPP, [1973] A.C. 435, 463 (H.L.) (appeal taken from Eng.) (U.K.).

To convict an accused of possession of more than five pounds of marijuana with intent to distribute, the Commonwealth must "prove that he 'intentionally and consciously possessed [marijuana], either actually or constructively, with knowledge of its nature and character, together with the intent to distribute it'" and that the amount he possessed was greater than five pounds. Shears v. Commonwealth, 23 Va. App. 394, 402, 477 S.E.2d 309, 313 (1996) (quoting Wilkins v. Commonwealth, 18 Va. App. 293, 298, 443 S.E.2d 440, 444 (1994) (en banc)) (alteration in original) (internal quotation marks omitted). "Possession of a controlled substance in 'a quantity greater than that ordinarily possessed for one's personal use may be sufficient to establish an intent to distribute it.'" Williams v. Commonwealth, 52 Va. App. 194, 202, 662 S.E.2d 627, 631 (2008) (quoting Monroe v. Commonwealth, 4 Va. App. 154, 156, 355 S.E.2d 336, 337 (1987)). A trial court may also consider "'expert testimony, usually that of a police officer,' . . . in determining whether drugs were possessed with intent to distribute." Askew v. Commonwealth, 40 Va. App. 104, 110, 578 S.E.2d 58, 61 (2003) (quoting Shackleford v. Commonwealth, 32 Va. App. 307, 327, 528 S.E.2d 123, 133 (2000), aff'd, 262 Va. 196, 547 S.E.2d 899 (2001)).

Here, the evidence at trial proved that the amount of marijuana appellant possessed, in fact, exceeded five pounds. Appellant admitted to the detective that he took possession of the package, which he knew contained marijuana, and that he intended to transfer the package and its contents to another. Detective Killingsworth, an expert witness, testified that the amount of

marijuana recovered from appellant's residence, almost nine pounds, was "very inconsistent with personal use."

From the record on appeal, we conclude the Commonwealth satisfied its burden of proving beyond a reasonable doubt that appellant intentionally and consciously possessed marijuana, with knowledge of its nature and character, together with the intent to distribute it, and that the marijuana he intended to distribute weighed more than five pounds. Accordingly, we find no error in the trial court's convicting appellant of possession of more than five pounds of marijuana with intent to distribute, in violation of Code § 18.2-248.1(a)(3).

C. Possession of a Firearm While Possessing Marijuana with Intent to Distribute

Appellant additionally contends the trial court erred in convicting him of violating Code § 18.2-308.4(C), which provides, in pertinent part, "It shall be unlawful for any person to possess . . . any . . . firearm . . . while committing or attempting to commit the illegal . . . possession with the intent to . . . distribute . . . more than one pound of marijuana." He contends the evidence presented at trial proved only that he had knowledge of the firearm, and "not . . . that he exercised dominion and control over [it] at the time it was discovered." We disagree.

> A conviction for the unlawful possession of a firearm can be supported exclusively by evidence of constructive possession; evidence of actual possession is not necessary. To establish constructive possession of the firearm by a defendant, "the Commonwealth must present evidence of acts, statements, or conduct by the defendant or other facts and circumstances proving that the defendant was aware of the presence and character of the firearm and that the firearm was subject to his dominion and control." While the Commonwealth does not meet its burden of proof simply by showing the defendant's proximity to the firearm, it is a circumstance probative of possession and may be considered as a factor in determining whether the defendant possessed the firearm.

Bolden v. Commonwealth, 275 Va. 144, 148, 654 S.E.2d 584, 586 (quoting Rawls v. Commonwealth, 272 Va. 334, 349, 634 S.E.2d 697, 705 (2006)) (citations omitted), cert. denied, 129 S. Ct. 284 (2008).

Appellant contends the Commonwealth's evidence failed to exclude all reasonable hypotheses of innocence. He argues that, based on the evidence presented at trial, "it was just as likely" that he had given the firearm, which was found with his brother's jacket, "to his brother days, weeks, or months before." "'Whether an alternative hypothesis of innocence is reasonable is a question of fact and, therefore, is binding on appeal unless plainly wrong.'" Stevens v. Commonwealth, 38 Va. App. 528, 535, 567 S.E.2d 537, 540 (2002) (quoting Archer v. Commonwealth, 26 Va. App. 1, 12-13, 492 S.E.2d 826, 832 (1997)). "The statement that circumstantial evidence must exclude every reasonable theory of innocence is simply another way of stating that the Commonwealth has the burden of proof beyond a reasonable doubt." Commonwealth v. Hudson, 265 Va. 505, 513, 578 S.E.2d 781, 785 (2003).

Here, appellant admitted to Detective Killingsworth that the pistol located on the kitchen table, adjacent to the pantry where he placed the marijuana package, belonged to him and that he used it for his protection. At trial, he testified that the pistol belonged to him. From the record on appeal, we conclude that appellant, who possessed more than five pounds of marijuana with intent to distribute, was "'aware of the presence and character of the firearm and that the firearm was subject to his dominion and control.'" Bolden, 275 Va. at 148, 654 S.E.2d at 586 (quoting Rawls, 272 Va. at 349, 634 S.E.2d at 705). See also, Wright v. Commonwealth, 53 Va. App. 266, 286, 670 S.E.2d 772, 782 (2009) (affirming conviction where accused admitted that "both drugs and a loaded handgun[,] [found] in close proximity to one another in his residence," were his).

Accordingly, we hold that the trial court did not err in finding the Commonwealth's evidence sufficient to prove beyond a reasonable doubt that appellant possessed a firearm while in possession of more than one pound of marijuana with intent to distribute violating Code § 18.2-308.4(C).

## III.  CONCLUSION

For the foregoing reasons, we affirm appellant's convictions of possession of more than five pounds of marijuana with intent to distribute and possession of a firearm while in possession of more than one pound of marijuana with intent to distribute.  However, we remand to the trial court solely to correct its conviction and sentencing orders consistent with this opinion.

<u>Affirmed on the merits,</u>
<u>and remanded with instructions.</u>